**In re Ronald K. SUDDARTH, Debtor.**

**Bankruptcy No. 97–04791–R.**

United States Bankruptcy Court,
N.D. Oklahoma.

June 5, 1998.

J. Scott McWilliams, Tulsa, OK, for Debtor.

Patrick J. Malloy, III, Tulsa, OK, for Trustee.

Pat Brown, for Movant, Arcadia Financial Ltd.

*ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY AND FOR ABANDONMENT OF PROPERTY*

DANA L. RASURE, Chief Judge.

On December 3, 1997, the Motion of Arcadia Financial Ltd. for Relief from Automatic

Stay and for Order Requiring Trustee to Abandon Property (the "Motion") was filed requesting that the automatic stay be modified with respect to a 1997 Dodge Stratus (the "Vehicle") and that the Vehicle be abandoned as having no benefit to the estate. On December 5, 1997, the Chapter 7 Trustee, Patrick J. Malloy III (the "Trustee"), filed Trustee's Objection to Motion of Arcadia Financial Ltd.("Arcadia") for Relief from Automatic Stay and for Order Requiring Trustee to Abandon Property (the "Objection"). In the Objection, the Trustee contends that Arcadia did not properly perfect its interest in the Vehicle due to Arcadia's failure to enter the date of the security agreement on the lien entry form as required by 47 O.S. Supp. 1996, § 1110.

On January 7, 1998, a hearing on the Motion was held wherein Arcadia contended that the Trustee was required to commence an adversary proceeding in order to request a determination as to the validity of Arcadia's lien on the Vehicle. Following the hearing, all matters raised were taken under advisement. Thereafter, the parties submitted briefs citing authorities in support of their respective positions. After reviewing the briefs and relevant case law and considering the stipulations and arguments of counsel, the Court makes the following findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

## I. Findings of Fact

On September 10, 1997, Debtor Ronald K. Suddarth ("Suddarth") entered into a retail installment agreement for the purchase of a used 1997 Stratus, wherein he granted a purchase money security interest in the Vehicle to Tulsa United Motor Sales. On September 11, 1997, Tulsa United Motor Sales assigned the retail installment agreement to Arcadia. Also on September 11, 1997, a representative of Arcadia executed a lien entry form as "Secured Party/Assignee" (the "Lien Entry Form"). The Lien Entry Form was complete in all respects except that the box on the form for the date of the security agreement was left blank. The signature of Arcadia's representative was dated September 11, 1997, however. The signed Lien Entry Form was delivered to and received by Jerry Conrey, a motor license agent on September 11, 1997. On October 14, 1997, Suddarth filed a Voluntary Petition for Relief under Chapter 7 listing the Vehicle as an asset of the estate.

## II. Conclusions of Law

### A. Determination of Validity of Lien in a Contested Matter

Bankruptcy Rule 7001 provides that:

> An adversary proceeding is governed by the Rules of this Part VII. It is a proceeding ... (2) to determine the validity, priority, or extent of a lien or other interest in property other than a proceeding under Rule 4003(d)....

The validity of a lien may be determined in contexts other than adversary proceedings, however. The validity of the movant's lien is a critical issue in stay modification proceedings that involve collateral that is property of the estate. That Arcadia's lien on the Vehicle is not properly perfected and therefore not valid against the Trustee is the Trustee's defense to Arcadia's motion to modify the automatic stay, and resolution of that issue is determinative as to whether stay modification is appropriate in this case. It would be premature to modify the stay to permit Arcadia to exercise its state law remedies against the Vehicle until a determination of the validity of Arcadia's lien is made. If the Trustee did not dispute perfection of Arcadia's lien in *this* proceeding, the stay would be modified and the Vehicle abandoned, and the Trustee would lose the only forum in which his Section 544 lien avoidance action may be brought, relinquishing a potential recovery for the estate. *See e.g., In re Poughkeepsie Hotel Associates Joint Venture*, 132 B.R. 287 (Bankr.S.D.N.Y.1991) (challenge to validity of underlying lien may be asserted as an affirmative defense to motion for relief from automatic stay); *University State Bank v. Davenport (In re Davenport)*, 34 B.R. 463, 466 (Bankr.M.D.Fla.1983) (trustee had claims under Sections 547 and 548 of the Bankruptcy Code to avoid creditor's lien which claims would not be available to the trustee in state court; therefore it was not appropriate to

modify the stay to permit the creditor to exercise its state remedies until determination of propriety of lien vis-a-vis the trustee was made); *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 184 (Bankr. N.D.Fla.1980) (modification of stay to permit foreclosure should not be granted to mortgagee who cannot established perfection of its mortgage); *see also* 10 Collier on Bankruptcy ¶ 7001.03[1] (objection to claim which disputes secured status may be determined in a contested matter if no claim for affirmative relief is sought by the objecting party).

The Trustee therefore has the duty to raise the issue of perfection in this contested matter as a defense to the request for modification of the stay, and this Court cannot determine the propriety of stay relief without resolution of the issue.

## B. Perfection

The Trustee contends that Arcadia's lien on the Vehicle is not perfected because Arcadia failed to fulfill the requirements for perfection under 47 O.S. Supp.1996, § 1110(A). If Arcadia's lien is unperfected, then the Trustee's interest in the Vehicle has priority over Arcadia's unperfected lien by virtue of the Trustee's status as a hypothetical judicial lien creditor which arose on the date of the commencement of this case. In that case, the Trustee would be entitled to liquidate the non-exempt portion of the Vehicle for the benefit of the unsecured creditors. *See* 11 U.S.C. § 544(a). If Arcadia's lien is perfected, however, modification of the stay is appropriate because the parties have stipulated that there is no equity in the Vehicle and neither the Trustee nor any other party in interest has shown any other grounds to justify the continuation of the automatic stay to prevent Arcadia from enforcing its lien.

Oklahoma's motor vehicle perfection statute, 47 O.S. Supp.1996, § 1110, states in pertinent part:

[A] security interest, as defined in Section 1–201 of Title 12A of the Oklahoma Statutes, in a vehicle as to which a certificate of title may be properly issued by the Oklahoma Tax Commission shall be perfected only when a lien entry form, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the [Oklahoma Tax] Commission or to a motor license agent.... [Except for the provisions regarding filing and duration of perfection of a security interest], Title 12A of the Oklahoma Statutes [the UCC provisions adopted by Oklahoma] shall be applicable to such security interests in vehicles as to which a certificate of title may be properly issued by the Commission.

47 O.S. Supp.1996, § 1110(A)(1).

It is undisputed that the Lien Entry Form completed by Arcadia contained the name and address of the secured party and that the Lien Entry Form (and, the Court assumes, the required fee and the existing certificate of title) were delivered to a motor license agent. It is also undisputed that the Lien Entry Form did not contain the date of the security agreement in the box labeled "Date of Security Agreement." [1]

The Trustee contends that because the Lien Entry Form did not contain the date of the security agreement, it does not comply with Section 1110(A) and therefore does not effect perfection of Arcadia's security interest in the Vehicle. Arcadia contends (1) that the perfection statute does not require the date of the security agreement on the *lien entry form,* but rather on the *application* for certificate of title, which is not necessary if a certificate of title already exists; or, in the alternative, (2) that the date set forth on the signature line of the Lien Entry Form suffices as the date of the security agreement and therefore there is no omission of a term required by the perfection statute; or (3)

---

1. The parties did not submit a copy of the certificate of title to this Court as an exhibit, so the Court cannot determine whether the certificate of title reflects the existence or date of Arcadia's lien. Perfection is not dependent upon the lien actually appearing on the certificate of title, how-ever. *See e.g., Liberty Nat'l Bank and Trust Co. v. Garcia,* 686 P.2d 303, 305 (Okla.Civ.App.1984) (bank was perfected even though tax commission failed to properly record the lien upon the certificate of title; bank did all that was required of it under the statute).

that Arcadia's delivery of the Lien Entry Form without the date of the security agreement constitutes "substantial compliance" with the perfection statute.

### 1. Requirement of Date of Security Agreement

■ Arcadia's first argument, that the perfection statute only requires the date of the security agreement to appear on the application for certificate of title and/or certificate of origin, and not on the lien entry form, is one plausible way to read the sparsely punctuated run-on sentence contained in the statute:

> [A] security interest, as defined in Section 1–201 of Title 12A of the Oklahoma Statutes, in a vehicle as to which a certificate of title may be properly issued by the Oklahoma Tax Commission shall be perfected only when a lien entry form, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the [Oklahoma Tax] Commission or to a motor license agent.

47 O.S. Supp.1996, § 1110(A)(1). Arcadia argues that the date of the security agreement is only required when registering and creating a certificate of title for a *new* vehicle and is not required when a vehicle has already been titled. The Vehicle involved herein was a used vehicle when purchased by Suddarth and therefore had been previously titled.

In the two cases in which the Oklahoma Supreme Court has ruled on certified questions involving interpretation of the perfection statute, however, the Supreme Court has by implication ruled out the possibility that the requirement for the date of security agreement is limited to the situation in which an application and certificate of origin is submitted to obtain a certificate of title on a *new* vehicle. In both *Woodson v. Ford Motor Credit Co. (In re Cook),* 637 P.2d 588

(Okla.1981), and *Woodson v. GMAC (In re Hembree),* 635 P.2d 601 (Okla.1981), the Oklahoma Supreme Court was asked to determine whether perfection occurred under Section 1110's predecessor statute. In both cases, the issue was whether certain items were required to appear on the *lien entry form* in order to achieve perfection. In both cases, the lien entry form was submitted with the *existing certificate of title,* indicating that the vehicle at issue was not a new untitled vehicle. In neither case did the Court find that the date of the security agreement was required only on the application for a new certificate of title, and not on the lien entry form. In fact, in *Cook,* the issue was whether an error in the date on the *lien entry form* was fatal to perfection, the underlying assumption being that the requirement for the date of the security agreement applied to the documents required for both new and used vehicles. *See Cook,* 637 P.2d at 590 ("[b]oth parties agree that the lien entry form contains all of the statutorily required information including the date of the Security Agreement.").

The Court concludes that the requirement for inclusion of the date of the security agreement set forth in the perfection statute is *not* limited to instances when an application for certificate of title for a new vehicle is submitted. The date of the security agreement is required for perfection in this case unless other circumstances justify the omission of the date of the security agreement.

### 2. Substantial Compliance

■ The motor vehicle perfection statute expressly incorporates the concepts and principles of the Uniform Commercial Code ("UCC") as adopted by the State of Oklahoma (title 12A of the Oklahoma Statutes), as applicable in interpreting and enforcing security interests in motor vehicles to the extent that the UCC provisions are not inconsistent with the procedures provided in the certificate of title statute.[2] Section 9–402(8) of title

---

**2.** Section 1110(A)(1) provides:

[Except for the provisions regarding filing and duration of perfection of a security interest], Title 12A of the Oklahoma Statutes [the UCC provisions adopted by Oklahoma] shall be applicable to such security interests in vehicles as to which a certificate of title may be properly issued by the Commission.

12A provides that "a financing statement substantially complying with the requirements of this section (regarding form of financing statement) is effective even though it contains minor errors which are not seriously misleading." 12A O.S.1991, § 9–402(8). Substantial compliance with the perfection statute is achieved if deviations from the strict requirements of the perfection statute do not seriously mislead any creditor.

Prior to the express incorporation of the UCC into the motor vehicle perfection statute (Section 1110 of title 47), the Oklahoma Supreme Court determined that "[t]he concepts of the [Uniform Commercial] Code shall govern in determining the sufficiency of notice" of a security interest in a motor vehicle on a certificate of title. *Cook,* 637 P.2d at 590. Further, the Court held that the motor vehicle perfection statute was "properly construed as a notice filing statute with requirements similar to those of Article 9 of the U.C.C." and found that "[w]hether the filing requirements have been substantially complied with so as to give the requisite notice to other creditors depends on the facts of each case." *Id.*

Moreover, the Oklahoma Supreme Court has declared that a "policy of liberal construction shall be applied to promote the underlying purpose of the UCC." *Hembree,*

635 P.2d at 603, citing 12A O.S.1971, § 1–102(1) ("This Act shall be liberally construed and applied to promote its underlying purposes and policies") and 12A O.S.1971, § 1–102(2) ("Underlying purposes and policies of this Act are: (a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; (c) to make uniform the law among the various jurisdictions."). The Court stated that the policy underlying perfection and recordation of security interests is "to provide notice to interested parties." *Id.* at 603.

In this case, the omission of the date of the security agreement could not seriously mislead any creditor.[3] Any creditor or purchaser seeking information about encumbrances on the Vehicle has notice from the face of the Lien Entry Form, which is on file at the Oklahoma Tax Commission, that Arcadia claims a lien as of September 11, 1997, the date that the Lien Entry Form was signed and delivered to the motor vehicle agent. Notice, the purpose of the perfection statute, has been achieved. Any creditor or purchaser creditor could easily contact Arcadia to determine additional information about the lien if necessary and would know that any sale or further encumbrance may be subject

---

47 O.S. Supp.1996, § 1110(A)(1).

**3.** In *Cook,* the Oklahoma Supreme Court presented a survey of Connecticut cases from the 1960's in which the issue was whether an inaccurate date, or omission of a date, in documents tendered for the perfection of a lien on a vehicle was a minor error not misleading to creditors, or was so misleading to creditors that perfection was not achieved. *See Cook,* 637 P.2d at 590–91. The errors ran the gamut from complete omission of a date to a date that was inaccurate by two years. *See id.* While the Connecticut courts found many of these errors to be serious enough to render the filing invalid, including the case of complete omission of the required date, the Oklahoma Supreme Court's chronicle of the Connecticut cases is dicta, as the facts before it in *Cook* were distinguishable. Further, in a case not cited by the Oklahoma Supreme Court, the United States District Court for the District of Connecticut held that the omission of the date of the security agreement on the title did not invalidate the security interest vis-a-vis a bankruptcy trustee when there was no indication that the omission actually misled the trustee or creditors. *See*

*In re Grandmont,* 310 F.Supp. 968 (D.Conn. 1970).

The Court in *Cook* found that there was "little possibility that [an eighteen-day discrepancy in the date of the security agreement] misled any potential creditor." *Id.* at 591. No one was actually misled or prejudiced by the error, and the certificate of title was issued with the lien appearing on its face, giving clear notice of the lien to any later potential creditor or purchaser. *Id.* The Court therefore found that the lien entry form, notwithstanding its error, substantially complied with the perfection statute, and the lien was perfected. *Id.*

The rule of substantial compliance requires a case by case factual analysis that takes into consideration whether enough information has been imparted by the creditor to give notice of the existence of the lien, the collateral upon which the lien has attached, a general idea of when the lien arose, and the identity of the debtor and the secured party so that a third party may inquire further if necessary. *See e.g., Liberty Nat'l Bank and Trust Co. v. Garcia,* 686 P.2d 303, 305 (Okla. Civ.App.1984). The fact that no one has actually been misled is highly relevant.

to Arcadia's claimed lien. Moreover, the Trustee does not show any actual or potential prejudice caused by the omission of the date from the box on the lien entry form.

The Court concludes that the facts of this case render the omission of the date of the security agreement a minor defect not seriously misleading and non-prejudicial to any actual party in interest. Arcadia has substantially complied with the perfection statute and therefore has perfected its lien on the Vehicle.

■ In light of the fact that the parties have stipulated that there is no equity in the Vehicle, and no other grounds have been urged in support of maintaining the Vehicle as property of the estate or in support of continuing the automatic stay as to the Vehicle, the Motion of Arcadia Financial Ltd. for Relief from Automatic Stay and for Order Requiring Trustee to Abandon Property is hereby **granted.**